# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

United States of America,

    Plaintiff/Respondent,

v.                                                            Case No. 06-20066-01-JWL
                                                         Case No. 13-2581-JWL

James A. McKeighan,

    Defendant/Petitioner.

## MEMORANDUM & ORDER

In May 2006, James A. McKeighan was indicted on four counts related to the possession of drugs and firearms and a jury ultimately convicted Mr. McKeighan on all four counts. The court sentenced Mr. McKeighan to a term of 293 months' imprisonment on Count One (possession with intent to distribute 5 grams or more of methamphetamine) and 120 months' imprisonment on the remaining counts. He is serving his sentences concurrently. The Tenth Circuit affirmed Mr. McKeighan's convictions and sentence on direct appeal. *United States v. McKeighan,* 685 F.3d 956 (10th Cir. 2012). This matter is now before the court on Mr. McKeighan's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (doc. 394). In that motion, Mr. McKeighan asserts numerous claims challenging the conduct of the government, his counsel and the court. As will be explained, the court denies each of Mr. McKeighan's claims and denies his request for an evidentiary hearing.

**I.**     **The Government's Conduct**

In his motion to vacate, Mr. McKeighan asserts numerous claims relating to alleged misconduct by the government. Because none of these claims were raised on direct appeal, he must establish cause excusing his procedural default and actual prejudice or show that a miscarriage of justice will occur if his claim is not addressed. *United States v. McGaughy*, 670 F.3d 1149, 1159 (10th Cir. 2012). He makes no such showing in his submissions with respect to any of these claims. As will be explained, the court denies one claim solely on the basis of the procedural bar and denies the remaining claims, regardless of the procedural bar, on the merits.

For the first time in this case, Mr. McKeighan asserts that he invoked his right to counsel at the time of his arrest such that federal agents subsequent questioning of him at the police station violated his *Miranda* rights as clarified in *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981) (once right-to-counsel is invoked, all questioning must cease and cannot resume in the absence of counsel unless the defendant initiates further discussions). The claim is rejected as it was not presented on direct appeal and because Mr. McKeighan has not demonstrated cause excusing his procedural default. *United States v. McGaughy*, 670 F.3d 1149, 1159 (10th Cir. 2012).

Mr. McKeighan next asserts that the government violated his Sixth Amendment rights by intentionally "intruding" into privileged communications between Mr. McKeighan and his counsel. Specifically, Mr. McKeighan contends that Detective Johnson listened in on phone conversations between Mr. McKeighan and his counsel and then used that information to assist the government. He also contends that the government improperly learned from Mr. McKeighan's counsel about the existence of a note signed by Michael Orr in which Mr. Orr stated that his girlfriend stored drugs and firearms in Mr. McKeighan's storage unit without Mr.

2

McKeighan's knowledge. With respect to the phone calls, Detective Johnson testified that he obtained recordings of telephone calls made by Mr. McKeighan while he was housed at CCA in Leavenworth and that he listened to several of those calls. According to Detective Johnson's uncontroverted testimony, he avoided listening to any conversations between Mr. McKeighan and his counsel and, to the extent he did not realize immediately that the conversation was with Mr. McKeighan's counsel, he stopped listening as soon as realized that fact. Detective Johnson specifically testified that he did not utilize any information in the investigation based upon phone calls between Mr. McKeighan and his counsel.

With respect to the note signed by Mr. Orr, there is simply no evidence or suggestion that Mr. McKeighan intended for his counsel not to disclose the existence of the note to the government and that, in all likelihood, is precisely what Mr. McKeighan intended. For if the note had been legitimate as Mr. McKeighan represented to his counsel (it was not), then it would have been a sound tactical decision by Mr. McKeighan's counsel to notify the government about the existence of the note in an effort to cause the government to rethink the charges against Mr. McKeighan or, at a minimum, the strength of its case against Mr. McKeighan. The fact that the note was fraudulent and that Mr. McKeighan's role in procuring the note resulted in an enhancement for obstruction of justice is not the fault of Mr. McKeighan's counsel or the government or the exchange of information between them. This claim is denied.

Mr. McKeighan also asserts a claim of "vindictive prosecution," alleging that the government and, more specifically, the prosecutor in this case, intentionally created conflicts of interest between Mr. McKeighan and his counsel thereby forcing the withdrawal of his counsel prior to trial; instructed CCA Leavenworth to place him in solitary confinement and/or

3

segregation pending sentencing; and instructed CCA Leavenworth to restrict his phone calls. The claim is denied. The Tenth Circuit, on direct appeal, has essentially decided the conflict of interest issue by holding, in connection with Mr. McKeighan's Sixth Amendment right-to-counsel-of-choice claim, that the government in this case did not intentionally create conflicts of interest between Mr. McKeighan and his counsel and, in fact, that the government had a duty to notify the court about the potential conflicts in this case. *McKeighan*, 685 F.3d at 969-70. With respect to Mr. McKeighan's placement in solitary confinement and the restriction of his telephone access, the record demonstrates that such measures were taken at the direction of the United States Marshal's Service in light of legitimate concerns for the safety of witnesses against Mr. McKeighan and to ensure that Mr. McKeighan would not further attempt to obstruct justice.

Mr. McKeighan complains that the government improperly convinced the jury to convict him of Count 3 which, according to Mr. McKeighan, charged him with possession of a machine gun despite the fact that the evidence demonstrated that he did not possess a machine gun. This claim is rejected. Putting aside the procedural bar, the record reflects that the court, at the suggestion of the government and with no objection from Mr. McKeighan's counsel, struck the phrase "machine gun" as surplus language from Count 3 at the limine conference prior to trial. That phrase was replaced with the word "rifle." The firearm, then, was correctly identified in the instructions to the jury. In any event, there is no prejudice to Mr. McKeighan because his sentence for the conviction on Count 3 is running concurrently to the much longer sentence imposed on Count 1 and the enhancement he received related to the number of firearms possessed by Mr. McKeighan rather than the particular type of firearm possessed.

Mr. McKeighan next asserts a claim of "malicious prosecution/abuse of process" based on the government's filing of Count 5 in the superseding indictment. By way of background, the government filed a superseding indictment which included Count 5—a charge of conspiracy to commit money laundering in connection with the $25,000 fee paid to Mr. McKeighan's retained counsel. At trial, the court granted Mr. McKeighan's motion for judgment of acquittal on Count 5 at the close of the government's case. In doing so, the court did not indicate that the charge was "false" or "bogus" or otherwise suggest that the charge was improper. Nonetheless, Mr. McKeighan asserts that he is entitled to a new trial or release from prison based on the government's filing of Count 5 because, according to Mr. McKeighan, the filing of Count 5 forced his retained counsel to withdraw from the case which, in turn, forced Mr. McKeighan to proceed to trial with substitute counsel. The record does not support Mr. McKeighan's recollection of the chronology of this case. Mr. McKeighan's retained counsel withdrew from the case in September 2006 and Count 5 was not added until February 2007. Moreover, the Tenth Circuit has already concluded (in connection with Mr. McKeighan's claim that the government denied him of his Sixth Amendment right to counsel of choice) that the government did not act improperly in raising concerns about the source of the funds underlying Count 5; that Mr. McKeighan "has not shown that the Government brought the superseding indictment in bad faith;" and that the direct cause of retained counsel's withdrawal was not the conduct underlying Count 5 but local counsel's independent decision to withdraw and retained counsel's inability to continue his representation of Mr. McKeighan without local counsel. *McKeighan*, 685 F.3d at 970. The claim, then, is denied.

Finally, Mr. McKeighan claims that the government suborned perjured testimony from Michael Orr, Detective Johnson and Detective Lawson. Mr. McKeighan has not demonstrated that the government knowingly elicited perjured testimony from any witness. In support of his claim, Mr. McKeighan either misstates the particular testimony that he challenges or simply disagrees with the specific facts to which these witnesses testified. Mr. McKeighan's counsel cross-examined each of these witnesses in an effort to undermine the credibility of their testimony and, ultimately, the jury determined that these witnesses were credible. While he highlights that Mr. Orr and Leigh Bledsoe testified inconsistently concerning the author of the note,[1] and that Mr. Orr perhaps testified inconsistently on other subjects, any tension between the testimony of Mr. Orr and Ms. Bledsoe (or any perceived inconsistencies in Mr. Orr's testimony) does not prove subornation of perjury by the prosecution. *See United States v. Henderson*, 179 Fed. Appx. 535, 540 (10th Cir. 2006). This claim is denied.

## II. Ineffective Assistance of Counsel

Mr. McKeighan asserts a series of claims in which he contends that the performance by his trial counsel was deficient in violation of his Sixth Amendment right to counsel. "To establish ineffective assistance of counsel, a defendant must show 'that counsel's representation fell below an objective standard of reasonableness' and that he was prejudiced by the deficient performance." *United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012) (quoting *Strickland*

---

[1] Mr. McKeighan contends that the court found Mr. McKeighan "guilty" of fabricating the note and obstructing justice in violation of *Alleyne* such that he is entitled, at a minimum, to resentencing. The obstruction of justice finding did not increase the range of penalties in this case so *Alleyne* is inapplicable and, in any event, *Alleyne* does not apply retroactively to cases on collateral review. *See In re Payne*, 733 F.3d 1027, 1029-30 & n.1 (10th Cir. 2013).

6

*v. Washington*, 466 U.S. 668, 687–88 (1984)). Many of Mr. McKeighan's claims are easily resolved because Mr. McKeighan has clearly failed to establish prejudice. He asserts that his counsel did not adequately consult with him prior to trial (although he acknowledges that his counsel visited him on numerous occasions prior to trial), did not adequately interview the government's witnesses prior to trial, did not subpoena any of Mr. McKeighan's witnesses (who are not identified), and did not file various pre-trial motions that Mr. McKeighan told him to file (although his counsel did file numerous pre-trial motions). Mr. McKeighan does not articulate how these purported failures prejudiced his defense in any way. He does not assert that any particular motion would have been meritorious; he does not identify any particular witness or exculpatory evidence that would have assisted his defense; and he does not allege how an alleged failure to adequately interview the government's witnesses caused any prejudice at trial. In fact, Mr. McKeighan's counsel cross-examined all of the government's witnesses and raised appropriate challenges as necessary. While Mr. McKeighan further asserts that his counsel did not ask certain (but unspecified) questions to the government's witnesses, he does not explain what those questions were or how those questions would have impeached any witness. In the absence of any indication whatsoever that Mr. McKeighan was prejudiced by these alleged failures, his claims for ineffective assistance must be denied.

Mr. McKeighan also contends that his counsel failed to call Mr. McKeighan's family members and friends to testify about his "good character" at the sentencing hearing and that, in the absence of such testimony, he received a longer prison sentence. In the absence of any indication from Mr. McKeighan about what these witnesses specifically would have said about Mr. McKeighan, the court cannot conclude that Mr. McKeighan was prejudiced by the absence

7

of such testimony. In any event, the court typically does not permit such testimony at sentencing. No prejudice, then, is demonstrated by this purported deficiency. Mr. McKeighan's claim that his counsel missed numerous deadlines concerning the filing of his appeal, resulting in the dismissal of his appeal, is similarly denied because no prejudice has been shown. The Tenth Circuit subsequently reinstated Mr. McKeighan's direct appeal and resolved that appeal on the merits. With respect to Mr. McKeighan's claim that his appellate counsel only selected three issues to raise on appeal despite a list of 13 issues provided to her by Mr. McKeighan, Mr. McKeighan has not identified any issue that would have been successful on appeal. No prejudice, then, is demonstrated. *United States v. Miller*, 464 Fed. Appx. 750, 752 (10th Cir. 2012) ("Without pointing to a winning argument passed over by his attorney, [defendant] cannot make a case for ineffective assistance on appeal.") (citing *United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006) (counsel has no duty to raise meritless issues on direct appeal)).

Mr. McKeighan also raises two claims concerning his counsel's handling of juror issues at trial. He alleges that his counsel should have requested a mistrial after jurors kept falling asleep during trial and that his counsel should have asked the court to strike two "pro-prosecution" jurors for cause rather than using peremptory strikes to eliminate those jurors. He has not shown that his counsel's performance was constitutionally deficient with respect to these issues. As the Tenth Circuit highlighted on Mr. McKeighan's direct appeal in the context of resolving whether Mr. McKeighan was denied his right to an impartial jury, "he has not identified the portions of the trial during which jurors allegedly slept or established that these portions were critical. Nor does the record establish that jurors actually slept during Mr. McKeighan's trial. His allegations are too vague to establish prejudice." *McKeighan*, 685 F.3d

8

956, 975 (10th Cir. 2012). With respect to counsel not moving to strike two jurors for cause, Mr. McKeighan has not identified the jurors, has not suggested what basis existed to make a challenge for cause and has not shown that such a challenge would have been successful.

According to Mr. McKeighan, his counsel's performance was further deficient because, despite Mr. McKeighan's request that he do so, he refused to hire an expert to analyze any fingerprints on the firearms found in the storage locker and, presumably, to testify that Mr. McKeighan's fingerprints were not found on any firearms. This claim is denied. Mr. McKeighan's trial counsel aptly pointed out to the jury the lack of fingerprint evidence linking Mr. McKeighan to the firearms and highlighted this deficiency as a weakness in the government's case. Nonetheless, the government's evidence linking the firearms to Mr. McKeighan was strong—the storage unit where the firearms were located was rented by Mr. McKeighan and he admitted that he was in possession of firearms at the storage unit and at his co-defendant's residence. In light of this evidence, it is highly unlikely that any fingerprint evidence obtained by Mr. McKeighan would have changed the outcome of the case.

Mr. McKeighan next contends that his counsel "badgered" him not to testify and advised him that he would receive an increased prison sentence if he testified and was found guilty. The court, at trial, specifically inquired of Mr. McKeighan about his decision not to testify and Mr. McKeighan assured the court that he fully understood that the decision to testify was entirely up to him and that he had made a personal decision, based on his belief as to his best interests, not to testify at trial. Mr. McKeighan further affirmed that no one had made any threats or statements "to get [him] to decide not to testify." For his part, trial counsel indicated to the court that he and Mr. McKeighan had discussed the issue at considerable length and had carefully

weighed the pros and cons of the issue. Moreover, Mr. McKeighan has not shown that the outcome of the trial would have been different had he elected to testify on his own behalf and, undoubtedly, Mr. McKeighan would have been subjected to a damaging cross-examination. He has not indicated what he would have said had he testified and, regardless of his testimony, there is no indication that it would have sufficiently outweighed the government's overwhelming evidence of guilt. *See United States v. Lott*, 365 Fed. Appx. 946, 949 (10th Cir. 2010). Mr. McKeighan, then, has not established either prong of *Strickland* with respect to this claim.

Mr. McKeighan also complains that his counsel did not adequately prepare for the suppression hearing in this case because he did not obtain a copy of the video depicting Mr. McKeighan's arrest; did not obtain a copy of the video depicting Mr. McKeighan's request for an attorney at the Wyandotte County police station; and did not subpoena his co-defendant to testify. This claim is denied. There is no evidence in the record suggesting that a video of Mr. McKeighan's arrest exists and, thus, no basis for concluding that his counsel was deficient for failing to obtain it. With respect to the videotape of Mr. McKeighan requesting an attorney at the police station, there is no prejudice by counsel's failure to utilize the video at the suppression hearing as the facts surrounding the video and the request for counsel are undisputed. The government did not dispute that Mr. McKeighan requested an attorney when federal agents asked Mr. McKeighan to memorialize his statements to them on video and asked him to sign a Miranda waiver on video. After several questions from Mr. McKeighan about that process, the agents terminated the interview. In other words, no incriminating statements were obtained from Mr. McKeighan after he requested an attorney and the government does not dispute that he asked for an attorney at this point in the interview. Nothing more could be gained from the

videotape itself. Finally, with respect to counsel's failure to subpoena Leigh Bledsoe, Mr. McKeighan has not shown that Ms. Bledsoe would not have invoked her Fifth Amendment privilege against self-incrimination; fails to articulate what testimony Ms. Bledsoe would have provided assuming she would have agreed to testify; and fails to articulate how that testimony might have changed the outcome of the suppression hearing. In the absence of those critical details, Mr. McKeighan cannot demonstrate that he was prejudiced by his counsel's failure to call Ms. Bledsoe as a witness at the hearing.

Mr. McKeighan's next claim is based on the undisputed fact that Mr. McKeighan did not see the final PSR—which recommended a higher sentencing range than the prior PSR—until the sentencing hearing. The preliminary PSR, which Mr. McKeighan did have the opportunity to review, set forth a guideline range of 188 to 235 months. At the sentencing hearing, Mr. McKeighan for the first time had the opportunity to see the final PSR which set forth a guideline range of 235 to 293 months based on a higher calculation of drug quantities for the purpose of determining relevant conduct. This issue was discussed at length at the sentencing hearing after which Mr. McKeighan's trial counsel requested a break in the hearing to allow Mr. McKeighan to view the final PSR and to permit counsel to explain the changes to him. Transcript of Sentencing Hearing at p. 53-62. After that break, Mr. McKeighan's counsel waived any objection to the late presentation of the PSR on the grounds that Mr. McKeighan's counsel's prior objections to relevant conduct fully covered the new material in the final PSR. *Id*. at 63-67. In addition, the court explained to the parties that it discerned no prejudice to Mr. McKeighan because the court, in resolving Mr. McKeighan's prior objections concerning relevant conduct, independently verified through the court's notes and the trial transcript the

11

entirety of the drug quantity calculation. *Id*. at 65-67. In other words, the court had already considered and rejected any objection that trial counsel might have made to the relevant conduct portions of the final PSR. *See United States v. McLymont*, 2008 WL 552439, at *4 (S.D. Tex. Feb. 27, 2008) (no prejudice from late presentation of final PSR where any and all objections to the final PSR were fully addressed by the court). The only "prejudice" indicated by Mr. McKeighan, then, is that he went into the sentencing hearing believing that he could receive 15 years and left the sentencing hearing with a sentence of nearly 25 years. But he had already proceeded to trial such that he did not rely to his detriment in any way on his belief or hope that he might receive 15 years. Thus, while the court acknowledges that Mr. McKeighan ultimately received a sentence beyond that which he expected to receive prior to the sentencing hearing, he has not shown any prejudice for purposes of *Strickland*.

Finally, Mr. McKeighan contends that his PSR contained "false" information in terms of both his criminal history and the drug quantities that the court found attributable to Mr. McKeighan for purposes of relevant conduct. Even assuming that Mr. McKeighan's criminal history is misrepresented or inaccurate, no prejudice has been shown because, as explained by the court at sentencing in response to the objections asserted by Mr. McKeighan's counsel, none of the specific convictions challenged by Mr. McKeighan affected his criminal history score or otherwise affected his sentence in any way. With respect to relevant conduct, Mr. McKeighan complains that the court's findings were based on hearsay and that, in any event, he was never "found guilty" of those quantities by a jury. Mr. McKeighan's trial counsel made appropriate— though ultimately unsuccessful—objections to the drug quantities assessed in the PSR such that it is difficult to determine how Mr. McKeighan believes his counsel's performance was

12

deficient. *United States v. Mullane*, 226 Fed. Appx. 810, 813 (10th Cir. 2007) (unsuccessful attempts by counsel to persuade court to impose lower sentence does not suggest performance deficient); *United States v. Harfst*, 168 F.3d 398, 402 (10th Cir. 1999) (actual presentation by counsel of defendant's argument for an adjustment, although unsuccessful, likely negates any claim of ineffective assistance of counsel). In any event, the court is permitted to rely upon hearsay statements in making relevant conduct determinations so long as those statements bear some "minimal indicia of reliability." *United States v. Damato*, 672 F.3d 832, 847 (10th Cir. 2012). As explained by the court during sentencing, the court found the trial testimony of Mr. Lawson, Mr. Johnson and Mr. Wright both credible and reliable on all issues related to relevant conduct. Mr. McKeighan's argument that a jury was required to make relevant-conduct findings is untenable. *United States v. Ferrel*, 603 F.3d 758, 766 (10th Cir. 2010) (post-*Booker*, a district court may find sentencing facts, including drug quantity for purposes of relevant conduct, by a preponderance of the evidence).

For the foregoing reasons, the court rejects each of Mr. McKeighan's claims of ineffective assistance of counsel. Because the record of this case conclusively establishes that Mr. McKeighan is not entitled to relief on these claims, an evidentiary hearing is not required and that request is denied. *See* 28 U.S.C. § 2255(b).

### III. The Court's Conduct

Lastly, Mr. McKeighan raises two issues with respect to the court's conduct which could have been but were not raised on direct appeal. He is procedurally barred from raising these issues for the first time on collateral attack unless he can demonstrate cause excusing the default

13

and actual prejudice resulting from the errors of which he complains or can show that a fundamental miscarriage of justice will occur if his claim is not addressed. *United States v. Cook*, 997 F.2d 1312, 1320 (10th Cir. 1993). He has not made the requisite showing and, even in the absence of a procedural bar, his claims have no merit. Mr. McKeighan asserts that the court improperly permitted Detective Johnson, the case agent who investigated the case, to remain in the courtroom during trial and to sit at the government's counsel table which, according to Mr. McKeighan, enhanced Detective Johnson's credibility and allowed him to tailor his testimony based on the testimony of other witnesses. Mr. McKeighan did not invoke Rule 615 at the limine conference or at trial and did not otherwise object to Detective Johnson sitting at counsel table or testifying midway through the trial. In any event, although Federal Rule of Evidence 615 provides that witnesses may be excluded from hearing the testimony of other witnesses, corporate officers or employees designated as representatives are exceptions to this rule and Circuit Courts of Appeal have consistently interpreted this exception to allow government case agents to set at counsel table throughout the trial. *See United States v. Valencia-Riascos*, 696 F.3d 938, 941 (9th Cir. 2012) (highlighting that the advisory committee notes to Rule 615 contemplate that government counsel will be permitted to have an investigative agent at counsel table throughout trial); *United States v. Charles*, 456 F.3d 249, 257-58 (1st Cir. 2006) (trial court has very little discretion to sequester the government's case agent).

Mr. McKeighan also contends that the court "rushed" the trial of this case in light of speedy trial issues with another criminal case set the week following Mr. McKeighan's trial and he speculates that "perhaps" or "possibly" his counsel did not call any witnesses or put on any

evidence "to help shorten the trial" and because he felt "pressured" to end the trial. This claim is rejected. Although Mr. McKeighan did not offer any evidence at trial, he has no evidence remotely suggesting that this strategic decision was related in any way to the fact that the court had another criminal case set to start the following week. The court placed no time limits or restrictions on either party and simply asked the parties, to the extent possible, to "expedite the presentation of any of the fairly standard evidence." In short, Mr. McKeighan has not shown that his counsel would have called any particular witness or put on any specific evidence but for the court's alleged time constraints on the trial of this case. In the absence of any showing of prejudice, the claim must be denied.

**Certificate of Appealability**

Effective December 1, 2009, Rule 11 of the Rules Governing Section 2255 Proceedings states that the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, the petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Saiz v. Ortiz*, 393 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)). With respect to the constitutional claims denied above, for the same reasons stated, Mr. McKeighan has not made a substantial showing of the denial of a constitutional right; the court therefore denies a certificate of appealability with respect to those issues.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. McKeighan's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (doc. 394) is denied.

**IT IS SO ORDERED.**

Dated this 3rd day of June, 2014, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
